```
                 UNITED STATES DISTRICT COURT

                   DISTRICT OF NEW HAMPSHIRE
```

Ryan Hardy and
Matthew O'Connor,
     Plaintiffs

     v.                           Case No. 20-cv-216-SM
                                  Opinion No. 2020 DNH 090

Granite State Insurance Company,
     Defendant


**O R D E R**

This is a declaratory judgment action in which plaintiffs seek a judicial determination of the limits of coverage provided under an insurance policy issued by defendant, Granite State Insurance Company. Plaintiffs originally filed their petition in the Hillsborough County Superior Court, seeking a declaratory judgment under state law. See N.H. Rev. Stat. Ann. ("RSA") 491:22. Granite State removed the action, invoking this court's diversity subject matter jurisdiction. Plaintiffs then amended their petition to include a count under the federal Declaratory Judgment Act. See 28 U.S.C. § 2201.

Pending before the court is Granite State's motion to dismiss the Amended Complaint. Granite State asserts that

plaintiffs are neither parties to, nor insureds under, the insurance contract and, therefore, lack standing to sue. Granite State also says plaintiffs' claims are not ripe for adjudication. Plaintiffs object. For the reasons discussed, Granite State's motion to dismiss (document no. 11) is denied. This matter is, however, remanded to the Hillsborough County Superior Court.

**Standard of Review**

When ruling on a motion to dismiss under Rules 12(b)(1) and 12(b)(6), the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010). See also Lyman v. Baker, 954 F.3d 351, 359-60 (1st Cir. 2020) (noting the same basic standard of review applies to motions under 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim)). Although the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege each of the essential elements of a viable cause of action and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (citation and internal punctuation omitted).

## Background

In April of 2016, Ian MacPherson purchased a firearm from Chester Arms, a federally licensed firearms dealer in Derry, New Hampshire. About six weeks later, Manchester Police Officer Ryan Hardy saw MacPherson walking in Manchester and noticed that he met the description of a man suspected of having recently robbed a gas station. Officer Hardy approached MacPherson and, at some point during their encounter, MacPherson shot Hardy several times in the face and torso. Hardy radioed in his status, location, and the direction in which MacPherson fled.

Approximately thirty minutes later, Manchester Police Officer Matthew O'Connor and members of the State Police saw a man fitting MacPherson's description. During the officers' efforts to apprehend him, MacPherson shot Officer O'Connor in the leg. MacPherson again escaped, but was arrested a few hours later. The weapon MacPherson used to shoot both officers was the one he had purchased from Chester Arms.

In July of 2018, Officer Hardy and Officer O'Connor brought separate lawsuits in state court asserting, among other things,

that MacPherson was a "prohibited person" (that is, someone barred from lawfully purchasing, owning, or possessing a firearm) and that Chester Arms had been negligent in selling the firearm to him.  That negligent sale, say plaintiffs, proximately caused their injuries when MacPherson subsequently shot them.

Chester Arms is insured by the defendant in this proceeding, Granite State Insurance Company.  Under the terms of its policy, Granite State provides Chester Arms with liability coverage of up to One Million Dollars ($1,000,000) for each insured "occurrence," with an aggregate limit of Two Million Dollars ($2,000,000).  Granite State has acknowledged coverage under the policy and is providing Chester Arms with a defense in state court.

At issue in this case is the proper interpretation of that insurance policy.  Officers Hardy and O'Connor say they were shot and injured in separate "occurrences" and, therefore, Granite State's policy provides Chester Arms with One Million Dollars of coverage in <u>each</u> of their separate lawsuits.  Granite State disagrees and says the officers' injuries were the product of a single insured "occurrence" (presumably Chester Arms' negligent sale of the firearm to MacPherson).  So, says Granite

4

State, because there is only a single covered "occurrence," Chester Arms' insurance coverage is limited to a total of One Million Dollars (for both claims).

As the defendant in the state negligence actions, and the insured under Granite State's policy, Chester Arms presumably shares the officers' interest in maximizing insurance coverage under the policy.  After all, its potential liability in the state negligence actions is substantial.  Yet, Chester Arms is not a party to this declaratory judgment action.

## Discussion

In their Amended Complaint, plaintiffs advance two virtually identical claims for declaratory relief: first, under the federal Declaratory Judgment Act, and second, under New Hampshire's state analog.  In each count, plaintiffs seek a judicial declaration:

- A. That Granite State Insurance Company is obligated to provide Chester Arms with liability insurance coverage in the amount of One Million Dollars ($1,000,000) per occurrence, subject to an aggregate of Two Million Dollars ($2,000,000);

- B. That the two separate and distinct incidents in which Ryan Hardy and Matthew O'Connor were shot and injured constitute two separate "occurrences" with respect to the Granite State insurance policy;

5

    C.    That Granite State Insurance Company is obligated to satisfy any judgment rendered against Chester Arms in favor of Ryan Hardy in the action presently pending in the Rockingham County Superior Court up to an amount of One Million Dollars ($1,000,000); and

    D.    That Granite State Insurance Company is obligated to satisfy any judgment rendered against Chester Arms in favor of Matthew O'Connor in the action presently pending in the Rockingham County Superior Court up to an amount of One Million Dollars ($1,000,000).

Amended Complaint at 7-8.

Granite State's pending motion does not address the merits of plaintiffs' interpretation of the underlying insurance policy. Rather, Granite State asserts that neither officer has standing to bring this action because neither is an insured under the policy. The contract of insurance is between Granite State and Chester Arms. So, says Granite State, only Chester Arms has standing (at least at this juncture) to question Granite State's interpretation of the policy language. And, as noted earlier, Chester Arms is not a party to this action.[1]

---

[1] The parties have not addressed whether Chester Arms is a necessary party to this litigation that should be joined under Fed. R. Civ. P. 19(a). Nor have they discussed whether adding Chester Arms (a limited liability company) would defeat this court's diversity subject matter jurisdiction. See, e.g., Carden v. Arkoma Assocs., 494 U.S. 185, 195-96 (1990) (providing that diversity jurisdiction in a suit by or against an artificial entity depends on the citizenship of all its members). See also Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina,

Moreover, Granite State asserts that the police officers' claims are not ripe for judicial resolution because Chester Arms' liability (if any) to the officers has not been resolved, and no fixed monetary claim for indemnification has been made against the insurance policy. Accordingly, says Granite State, plaintiffs' amended complaint should be dismissed.

I. Plaintiffs' Standing.

Many federal courts have concluded (sometimes in slightly different procedural postures) that tort victims can have standing in declaratory judgment actions seeking a determination of the scope of insurance coverage provided by a tortfeasor's insurer. See, e.g., Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270 (1941). See also Ricchio v. Bijal, Inc., 424 F. Supp. 3d 182, 186–87 (D. Mass. 2019) (collecting cases). See generally Bankers Tr. Co. v. Old Republic Ins. Co., 959 F.2d 677, 681–82 (7th Cir. 1992); Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co. of Reading, Pa., 873 F.2d 229, 232 (9th Cir. 1989); Federal Kemper Insurance Co. v. Rauscher, 807 F.2d 345 (3d Cir.

---

Inc., 435 F.3d 51, 54 (1st Cir. 2006)(noting that this rule applies to partnerships and limited liability companies). See generally Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California, 463 U.S. 1, 15–19 (1983) (observing that the federal Declaratory Judgment Act does not independently vest federal courts with subject matter jurisdiction. Rather, the court's jurisdiction turns on whether the requirements of either 28 U.S.C. § 1331 or § 1332 are met).

1986); Penn Am. Ins. Co. v. Valade, 28 F. App'x 253, 256-57 (4th Cir. 2002).

Similarly, the New Hampshire Supreme Court (and, necessarily, the New Hampshire Superior Courts) have, on many occasions, permitted victims to pursue declaratory judgment actions against their tortfeasor's insurance provider (without directly addressing the question of standing). See, e.g., Cogswell Farm Condo. Ass'n v. Tower Grp., Inc., 167 N.H. 245 (2015); St. Pierre v. State Farm Mut. Auto. Ins. Co., No. 2014-0225, 2014 WL 11485835 (N.H. Nov. 21, 2014); White v. Vermont Mut. Ins. Co., 167 N.H. 153 (2014); Brown v. Concord Grp. Ins. Co., 163 N.H. 522 (2012); Warner v. Clarendon Ins. Co., 154 N.H. 331 (2006); Guilfoy v. United Servs. Auto. Ass'n, 153 N.H. 461 (2006); Banfield v. Allstate Ins. Co., 152 N.H. 491 (2005); High Country Assocs. v. New Hampshire Ins. Co., 139 N.H. 39 (1994); Brown v. City of Laconia, 118 N.H. 376 (1978).[2]

---

[2] The only apparent opinion from a New Hampshire court standing in opposition is one from the Strafford County Superior Court, in which the court declared, without elaboration, that a tort victim lacked standing to bring a declaratory judgment against his tortfeasor's insurer. Yet, despite that finding, the court went on to rule on the merits of the plaintiff's claims. See O'Connor v Certain Underwriters at Lloyd's of London, No. 03-E-0064, 2005 WL 6310216 (N.H. Super. Jan. 25, 2005).

8

Granite State argues that the decisions cited above are distinguishable because, in each, the court "inadvertently" failed to recognize the standing issue. Defendant's Reply Memorandum (document no. 14) at 10. But, a plaintiff's standing (or lack thereof) implicates the very core of the court's authority to preside over a matter: subject matter jurisdiction. See, e.g., Duncan v. State, 166 N.H. 630, 640 (2014) (explaining that "standing is a question of subject matter jurisdiction"). In every case before them, courts must first assess their subject matter jurisdiction – sua sponte, if necessary. See, e.g., Arbaugh v. Y&H Corp., 546 U.S. 500, 514, (2006) ("Courts, including [the Supreme Court], have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."). See also Libertarian Party of New Hampshire v. Sec'y of State, 158 N.H. 194, 195-96 (2008) (same).

The New Hampshire Supreme Court undoubtedly considered its jurisdiction to hear each of the cases cited above and likely accepted that a victim's standing to bring a declaratory judgment action under RSA 491:22 against its tortfeasor's insurer is so obvious and well-understood that it required no argument from counsel and no discussion from the court.

9

II.  <u>Remand to State Court is Appropriate</u>.

But, this court need not resolve the standing/ripeness issue under the federal Declaratory Judgment Act.  Nor is it necessary to settle the analogous question under RSA 491:22 (or certify the question to the New Hampshire Supreme Court).  The absence of Chester Arms from this litigation - whether intentional or inadvertent – gives rise to prudential considerations that weigh against this court's exercise of its discretion to consider the plaintiffs' petition for declaratory judgment.

It is a well-understood proposition that federal courts are vested with discretion to determine whether it is appropriate to entertain a petition for declaratory relief.  As the Supreme Court has observed:

> There is nothing automatic or obligatory about the assumption of jurisdiction by a federal court to hear a declaratory judgment action.  By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.  Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close.  In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their

> jurisdiction yields to considerations of practicality
> and wise judicial administration.

Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995) (citations, footnote, and internal punctuation omitted). See also Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 39 (1st Cir. 2006) ("The [Declaratory Judgment] Act neither imposes an unflagging duty upon the courts to decide declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies. Consequently, federal courts retain substantial discretion in deciding whether to grant declaratory relief.") (citations and internal punctuation omitted).

In this case, issues of comity, judicial restraint, fundamental fairness, and the efficient use of judicial resources all counsel in favor of declining to address plaintiffs' petition. This court (DiClerico, J.) previously identified and discussed several of those issues in a case that presented a substantially similar procedural posture to this one – that is: (a) a declaratory judgment action, (b) filed by a tort victim against the tortfeasor's insurance carrier, and (c) to which the insured tortfeasor was not a party. See Warner v. Frontier Ins. Co., 288 F. Supp. 2d 127 (D.N.H. 2003).

Judge DiClerico's thoughtful reasoning in Warner need not be rehearsed.  It is enough to note that even if this court were to resolve the present dispute between the officers and Granite State over the limits of policy coverage, that determination likely would not bind Chester Arms (since it is not a party to this litigation).  Nor, indeed, would it bind the state courts.  See generally Massachusetts Delivery Ass'n v. Coakley, 671 F.3d 33, 47-48 (1st Cir. 2012).  That, in turn, leaves open the possibility that the state court might subsequently reach a conflicting interpretation of the policy language at issue (say, in an action brought by Chester Arms against Granite State).  As Judge DiClerico noted in Warner, that kind of uncertainty and potential conflict could prejudice the parties, inject needless confusion into their dispute, and even adversely affect settlement negotiations.  See Id. at 131.  See also Maryland Casualty, 312 U.S. at 274 (discussing the potential problem of conflicting state and federal interpretations of an insurance policy when each interpretation is binding on fewer than all affected parties).

Conflicting interpretations of the same insurance policy language should be avoided – particularly when such potentially conflicting interpretations involve the same or related parties, or arise out of the same underlying factual circumstances.  By

declining to entertaining plaintiffs' declaratory judgment action in the absence of Chester Arms, this court can avoid potential conflicts by deferring to the state court, which plainly has both subject matter jurisdiction and personal jurisdiction over all parties.

## Conclusion

For the foregoing reasons, as well as those expressed by the court in Warner v. Frontier Ins. Co., 288 F. Supp. 2d 127 (D.N.H. 2003), the court declines to exercise its discretion to hear plaintiffs' declaratory judgment claims.

Nevertheless, Granite State Insurance Company's motion to dismiss (document no. 11) is denied and the Clerk of Court shall remand this matter to the Hillsborough County Superior Court - the state court from which it was removed.  Defendant's motion to strike (document no. 15) is denied as moot.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 28, 2020

cc: Gordon A. Rehnborg, Jr., Esq.
    Mark D. Morrissette, Esq.
    Tamara S. Holtslag, Esq.